UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TERRANCE TILLER                                                                                   PLAINTIFF

V.                                                       CIVIL ACTION NO. 3:24-CV-94-KHJ-MTP

CITY OF JACKSON, et al.                                                                    DEFENDANTS

ORDER

Before the Court is Defendant City of Jackson's [37] Motion for Summary Judgment.[1] For the following reasons, the Court grants the [37] Motion and dismisses the federal ADA and equal-protection claims with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims, and it dismisses them without prejudice.

I.    Background

The issue before the Court is whether the Defendant City of Jackson ("the City") discriminated against Plaintiff Terrance Tiller ("Tiller") because of his mental disability.

To frame this issue, the Court provides a brief background. Tiller was a Sergeant in the Patrol Division of the Jackson Police Department ("JPD"). Compl. [1] at 3; [40] at 1. In April 2020, while responding to a burglary in progress, Tiller

---

[1] Jackson Police Department, a named defendant in this matter, is not a separate legal entity under Mississippi law; it is incapable of being sued. *Moore v. Laurel Police Dep't*, No. 2:22-CV-1, 2022 WL 22236294, at *1 (S.D. Miss. Mar. 2, 2022) (collecting cases); *Rolen v. City of Brownfield*, 182 F. App'x 362, 363 (5th Cir. 2006) (per curiam); *see also* Fed. R. Civ. P. 17(b)(3); Mem. Supp. Mot. [40] at 1 n.1;. The Court, therefore, dismisses with prejudice all claims against the Jackson Police Department ("JPD").

fatally shot a suspect. [1] at 3; [40] at 1. So he was placed on mandatory, paid administrative leave, pending the results of an investigation. *See* [40] at 2; *see also* April 2020 Leave Notification [37-1]. Following a psychological evaluation, in accordance with JPD policy, Psychologist C. Bufkin Moore, Psy.D. ("Dr. Moore") declared Tiller unfit to return to duty. [40] at 2–3; *see also* Evaluation Request [37-2]; JPD General Order on Use of Force [39-7] at 6–7; JPD General Order on Critical Incident Response [39-8] at 1–2; May 2020 Moore Report [37-3].

After being cleared in November 2020 by JPD Chief James Davis ("Chief Davis"), *see* Clearance Notification [37-4], Tiller returned to work for a singular day.[2] [40] at 3. While there, Tiller suffered "emotional dysregulation," and so Chief Davis "relieved [him] of his official police duties and returned him to administrative leave." *Id.*; *see also* Return to Leave Notification [37-5]. Tiller was later evaluated by Moore two more times, and each time, he was still found unfit for duty due to "symptoms consistent with Posttraumatic Stress Disorder [("PTSD")] and Anxiety." [40] at 3; July 2021 Moore Report [37-7] at 1; *see also* June 2021 Moore Report [37-8].

In July 2022, Tiller received a [38-1] Pretermination Letter from JPD for "job abandonment." [40] at 3; [38-1]. Tiller, "[o]n several occasions, . . . failed to check in as a condition of being placed on [a]dministrative [l]eave," and this constituted "a no show for work." [40] at 4; [38-1] at 1. His "failure to report to work or contact [his]

---

[2] The [40] Memorandum states that Tiller "returned to work on Monday, November 23, 2024." [40] at 3. The Court notes this date is incorrect. The [1] Complaint and the [44] Reply confirm Tiller returned to work in November 2020. *See* [1] at 3; [44] at 1.

2

supervisor for more than three consecutive work days" justified termination. [40] at 4; [38-1] at 2. Following a post-termination hearing, where Tiller defended his absences by explaining he "had been prescribed medications that caus[ed him] to sleep like a 'zombie,'" Reinstatement Letter [38-4] at 1, Tiller was reinstated "on the condition that [he] produce a medical report stating that he [could] perform the essential functions of the job of sergeant." [40] at 4; *see also* [38-4]. He was given until August 24, 2022, to submit that report. *Id.*

On August 17, 2022, Tiller requested additional time to produce the report, stating he could not "see his psychiatrist until his previously schedule[d] appointment on September 27, 2022." [40] at 5; August 2022 Letter [38-5]. By October 2022, he had still failed to provide JPD with the required medical report. [40] at 5. So JPD sent Tiller another [38-6] Pretermination Letter on October 24, 2022. [40] at 5. The [38-6] Letter "indicated that a pretermination hearing would take place on November 1, 2022," and "[t]he [JPD] Internal Affairs Division . . . prepared an investigative report on [Tiller's] failure to provide a medical report allowing him to return to full duty status." [40] at 6; *see also* [38-6]; Internal Affairs Report [38-7].

After Tiller admitted he believed he could not return to work as a JPD Sergeant,[3] and after Tiller failed to produce the required medical documentation verifying his ability to do so, on January 11, 2023, the City terminated Tiller

---

[3] When asked in his [39-2] Deposition—taken in his separate worker's compensation action—"[a]s we sit here today, do you believe that you could return to work for the JPD in your prior job as a patrol sergeant?" *Id.* at 5. Tiller responded: "No, not at this time." *Id.*

3

through a [38-8] Termination Letter. *See* [40] at 6–7. The termination was then affirmed on appeal. *Id*.; Order [38-10]. So Tiller filed a [39-6] Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and in turn, filed the [1] Complaint. [40] at 2, 7; [39-6]; [1]. Tiller claims he has suffered disability discrimination under the Americans with Disabilities Act ("ADA") and the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. [40] at 2, 7; [1] at 10–12. Tiller also includes various state-law claims for negligence, bodily injury, and mental anguish. [1] at 10.

The City of Jackson now moves for summary judgment on the federal ADA and equal-protection claims on six grounds:

> (1) there is no direct evidence of disability discrimination; (2) [Tiller] is not a qualified individual with a disability[;] (3) [Tiller] did not suffer disparate treatment; (4) the City can require a police officer, such as [Tiller], to provide a fitness for duty evaluation from a physician; (5) [Tiller] is not entitled to indefinite leave as an accommodation for his mental disability under the ADA; and (6) the City is entitled to summary judgment on [Tiller's] equal protection claim under the rational basis test and under *Monell*.

[40] at 2. Tiller responded in opposition, arguing that he offered direct evidence of discrimination, was treated less favorably than a non-disabled JPD employee, and sought treatment through medication and counseling, among other things. *See* Mem. Opp'n Mot. [43]. The Court addresses each of the [37] Motion's grounds sequentially, and it finds summary judgment appropriate on the federal ADA and equal-protection claims.

II.    Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (cleaned up).

"If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Bayle v. Allstate Ins.*, 615 F.3d 350, 355 (5th Cir. 2010) (cleaned up). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* The non-movant's failure "to offer proof concerning an essential element of [his] case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *EEOC v. WC&M Enters.,*

*Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (cleaned up). "The sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (cleaned up). But "[c]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation will not survive summary judgment." *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (cleaned up).

III. Analysis

    A. Summary Judgment Grounds

        1. Direct Evidence of Disability Discrimination

Tiller has not presented direct evidence of disability discrimination.

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (cleaned up).[4] The Fifth Circuit defines direct evidence as "evidence which, if believed, proves the fact without inference or presumption." *Clark*, 952 F.3d at 579 (cleaned up); *see also* 42 U.S.C.

---

[4] Under *McDonnell Douglas*, to establish a prima facie case of discrimination under the ADA, a plaintiff must prove: "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (cleaned up). Tiller is unable to establish a prima facie case of discrimination.

6

§ 12112. "Direct evidence is rare." *Clark*, 952 F.3d at 579 (cleaned up). "If an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). For example, an employer's comment may be circumstantial evidence of animus when it permits an "inference that the [disability] was the reason why [the employee] would not be returning to work." *Id.*

Tiller's case for direct evidence boils down to a singular assertion: The "Chief of Police[,] on a City of Jackson [l]etterhead[,] stated that[:] 'In light of your medical condition . . . .'" [43] at 5; *see* Termination Letter [41-6]. According to Tiller, this is "direct evidence . . . proffered in favor of denying [the City's] [37] [M]otion . . . because [the City has] not offered any legitimate reason of the ADA violation." [43] at 5.

This is not the case. The [41-6] Letter from Chief Davis more fully reads: "In light of your medical condition and your inability to fulfill the obligation requirements as a Sergeant, the City of Jackson Police Department has concluded that retaining and employing you in a position that you no longer qualify for is not an option." [41-6] at 1. So contrary to Tiller's assertion, the City of Jackson decided to terminate Tiller because he was unable to safely fulfill his job obligations.[5] The [41-6] Letter from the City, therefore, is not direct evidence of discrimination. *See Bibbs v. Motiva Enters. LLC*, No. 1:23-CV-315, 2024 WL 5088130, at *8 (E.D. Tex.

---

[5] Police officers have the obligation and "general duty to keep the public safe." *Walton v. City of Verona*, 82 F.4th 314, 323 (5th Cir. 2023).

7

Nov. 20, 2024) (finding an email terminating an employee based on employer's determination, after an independent, required medical evaluation, that employee was not fit for duty did not constitute direct evidence of disability discrimination in violation of the ADA).[6]

The City bolsters its argument that Tiller "cannot and has not produced any direct evidence of disability discrimination" by providing additional evidence. [40] at 10. For example, the City submits evidence that it allowed Tiller to remain on paid leave for over two years, reinstated him to paid leave after he abandoned his job responsibilities, and granted him additional time to produce the required medical documentation from a physician of his choosing to verify his ability to return to duty. *Id.*; *see also* [37-1] (notifying Tiller that he was being placed on paid leave, according to JPD policy); [38-4] at 1 (reinstating Tiller's employment "subject to [him] submitting . . . a medical report which confirms that [he is] capable of performing the essential functions of . . . a [p]olice [s]ergeant"); [38-5] (Tiller asking for additional time to produce the medical report clearing him for duty). The City also provides Tiller's sworn testimony, admitting he believed he could not return to

---

[6] Tiller's remaining attempts to show direct evidence of discrimination fail, as well. For example, Tiller claims he should have been given an administrative job. [43] at 14. Yet, this is the first time this claim is raised, and he cites no case law or policy to back this contention. Even so, his [41-6] Termination Letter encouraged him to consider applying for a civilian position, stating the City "would be honored to assist [him] with [the] process." [41-6] at 1. Tiller also claims he was "treated less favorably than a non-disable[d] person as stated in the lawsuit, namely Kim Brown." [43] at 6. This too, is conclusory; Tiller has offered the Court no specific facts to identify Kim Brown or to show how she was granted more favorable treatment by the City.

8

work. [39-2] at 5. The presentation of this evidence negates Tiller's accusation that the City treated him unfavorably because of his mental disability.

Because Tiller has provided no sworn, competent summary judgment evidence to support a finding of direct evidence of disability discrimination, summary judgment is appropriate.

    2. Qualified Individual

Tiller has not established he is a "qualified individual" under the ADA.

Because Tiller's evidence of discrimination is circumstantial, at best, the Court proceeds under *McDonnell Douglas*. *See Clark*, 952 F.3d at 582. Accordingly, Tiller bears the burden to establish that he is a "qualified individual" under the ADA.

"A 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam) (cleaned up); *see also id.* at 1093 (also defining a qualified individual as "one who is able to meet all of the [job's] requirements in spite of his handicap" (cleaned up)); 42 U.S.C. § 12111(8). "To prove he is a qualified individual, [Tiller] must show either he could perform the essential functions of the job in spite of his disability or a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Buckner v. W. Tallahatchie Sch. Dist.*,

9

No. 3:23-CV-417, 2024 WL 3763601, at *6 (N.D. Miss. Aug. 12, 2024) (cleaned up). And he has not.

The City of Jackson asserts, according to Dr. Moore's "professional opinion," that Tiller was "not fit for duty as a police sergeant because of [his PTSD]." [40] at 11. While Tiller claims he was seeking psychiatric treatment, *see* [39-2] at 5, he was still "unable to produce a medical evaluation stating that he could perform the essential functions of the job of sergeant." [40] at 11. Moreover, the City again points out that Tiller himself testified he "could not return to work as a police sergeant." *Id.* (citing [39-2] at 5). The City summarizes its stance:

> [Tiller], suffering from PTSD, cannot find a doctor to say that, despite his serious mental condition, he can perform the rigorous and stressful duties of a police patrol sergeant in Jackson, Mississippi. Also, [Tiller], an experienced police officer intimately familiar with his own job and personal capabilities, actually swears under oath that he is not fit to return to work. Clearly, [Tiller] is not a qualified individual with a disability under the ADA . . . .

*Id.* at 12; *see also* [37-3] at 2 (stating that "Tiller is deemed not fit for return to duty"); [37-7] at 2 (same); [37-8] at 2 (same).

In response, Tiller, again, produces no sworn, competent summary judgment evidence that he is a qualified individual—able to perform the essential functions of a police sergeant with or without a reasonable accommodation. *See* [43] at 16–17. Because he has failed to show he is a qualified individual under the ADA, summary judgment is appropriate.

   3. Disparate Treatment

Tiller has not shown he suffered disparate treatment by the City.

10

In order to make a prima facie showing of ADA discrimination, Tiller must show that JPD "treated [him] less favorably than other non-disabled employees similarly situated." *Zimmer v. Sw. Bell Tel. Co.*, 108 F. App'x 172, 173 (5th Cir. 2004) (per curiam). He must "point to a comparator who was similarly situated," and he must "establish that the comparator was treated more favorably than [him] under nearly identical circumstances." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021) (cleaned up). And he has not.

JPD has written policies in place to determine the proper procedure following an officer-involved shooting, resulting in the death of another. *See* [39-7] at 6–9 (requiring JPD officers involved in fatal shootings to be placed on administrative leave, investigated, and required to undergo treatment); [39-8] at 1–2 (explaining JPD officers involved in fatal shootings may be placed on administrative leave, may only return upon approval by the Chief of Police, and must see the mental health provider selected by JPD); JPD General Order on Investigation of Employee Misconduct [39-9] at 3 (requiring JPD officers involved in fatal shooting be removed from duty and explaining the officer may be "relieved of duty at any point during the investigation, especially when the resumption of duty may compromise the integrity of . . . [JPD]"). JPD also has written policies in place to determine the proper procedure for officers placed on administrative leave. According to the [38-2] JPD Internal Affairs Investigative Report, all employees on administrative leave are subject to "obligations and conditions." [38-2] at 1. For example, employees are

11

"to check in with the Internal Affairs Division each day (Monday-Friday) between the hours of 8:30-9:30 by calling the number listed." *Id.* (cleaned up); *see also* [37-1].

These policies do not stem from Tiller's mental disability. Rather, they stem from Tiller's position as a JPD officer and his involvement in a fatal shooting. JPD officers, regardless of disability, are placed on a required, administrative leave following a fatal shooting in the line of duty. *See* [39-7] at 6–9. JPD officers placed on administrative leave, regardless of disability, are required to check in each weekday. *See* [38-2] at 1. JPD officers, regardless of disability, face dismissal if their return to duty could compromise JPD. *See* [39-9] at 3.

And as previously discussed, Tiller claims that he was "treated less favorably than a non-disable[d] person as stated in the lawsuit, namely Kim Brown." [43] at 6. This conclusory statement, however, is not supported by any specific facts, legal precedent, or explanation of who Kim Brown is or how she allegedly received more favorable treatment from the City of Jackson.

Tiller has not shown that he was treated less favorably than a non-disabled person under nearly identical circumstances, because of his disability, under these general JPD policies. Because Tiller has provided no sworn, competent summary judgment evidence to support his claim of disparate treatment, summary judgment is appropriate.

    4. Accommodations under the ADA

Tiller is not entitled to indefinite leave as a reasonable accommodation under the ADA. He concedes this point. [43] at 17 (Tiller is "not seeking indefinite[] leave

12

with pay, rather the justice in keeping with the [ADA].").  And according to him, the "very point of [the] ADA" is that the City "should find alternative work for [Tiller] rather than terminate based on the disability." *Id.* at 14.

This argument fails. The ADA "requires an employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (cleaned up).[7] A reasonable accommodation enables an employee to perform the essential functions of the job. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (explaining "the ADA does not require an employer to relieve an employee of any essential functions of his . . . job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so" (cleaned up)). The ADA does not prohibit adverse action due to a consequence of a disability, such as being unable to perform essential job duties because of an injury or illness. *Hypes ex rel. Hypes v. First Com. Corp.*, 134 F.3d 721, 726–27 (5th Cir. 1998) (per curiam) (citing 42 U.S.C. § 12112(a)). And "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016).

Tiller's termination was not prohibited under the ADA because he was unable to perform the essential functions of his job. So to the extent that Tiller's case rests on the notion that he is entitled to indefinite, paid leave due to his mental

---

[7] As discussed above, Tiller does not meet the criteria of a "qualified individual" under the ADA.

13

disability declaring him unfit to perform the essential functions of his job, or that he is entitled to alternate or modified JPD Patrol Sergeant duties, summary judgment is appropriate.

### 5. Fitness for Duty Evaluation

Under the ADA, the City of Jackson can lawfully require a fitness-for-duty evaluation when it is deemed "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Tiller also concedes this point. [43] at 16 (stating the City's "defense seems to rotate on stating that they can cause a fitness evaluation to occur, [and Tiller's] response was that of course they can").

When a police officer is unable to "safely perform his job's essential functions," regardless of disability, a fitness-for-duty evaluation is appropriate. *Bibbs*, 2024 WL 5088130, at *8 (cleaned up); *see also Vasquez v. Union Pac. R.R.*, No. 5:22-CV-478, 2024 WL 4312257, at *5 (W.D. Tex. Aug. 26, 2024), *report and recommendation adopted*, 2024 WL 4314952 (W.D. Tex. Sept. 23, 2024); *Crews v. Dow Chem. Co.*, 287 F. App'x 410, 412 (5th Cir. 2008) (per curiam) (affirming the lower court's grant of summary judgment because the employer articulated a legitimate, nondiscriminatory rationale for requiring the fitness-for-duty assessment). And "[a]s a paramilitary organization charged with maintaining public safety, a police department must ensure that its officers are in peak physical and mental condition." *Taylor v. City of Shreveport*, 798 F.3d 276, 286 (5th Cir. 2015); *see also Tullos v. City of Nassau Bay*, 137 F. App'x 638, 650 (5th Cir. 2005) (per curiam) (noting "mental and emotional stability is paramount to the position of a

14

police officer" (cleaned up)). Thus, evaluations ensuring the peak physical, emotional, and mental stability of police officers are both job-related and consistent with business necessity.

This is reflected in the JPD General Orders, which outline specific procedures following a critical incident. When a JPD officer, in the line of duty, takes action resulting in the death of another, the Police Chief shall "[p]lace the officer on administrative leave for an appropriate period of time, if deemed appropriate," "[c]ause an internal affairs investigation to be made of the incident," and "[r]equire the officer to attend stress counseling from a qualified, licensed professional experienced in the area of psychiatric and/or psychological evaluation." [39-7] at 6–7; *see also* [39-8] at 2 (explaining that JPD officers must "see the mental health provider selected by [JPD] when a shooting occurs"). An officer may be relieved of duty "when the resumption of duty may compromise the integrity of . . . [JPD]." [39-9] at 3.

Tiller, as a JPD officer, was subject to these protocols following the fatal shooting in April 2020. JPD selected Dr. Moore to evaluate Tiller, *see* [43] at 9, and after multiple evaluations, Tiller was found unable to safely return to duty. *See* [37-2] at 2; [37-7] at 2; [37-8] at 2. The Court does not find these protocols were meant to "harm . . . [Tiller's] rights under [the] ADA" or to "spoil the effects of [the] ADA." [43] at 12–13. Rather, they were implemented to safeguard both officer and public safety. *See* [39-7] at 1 (explaining the purpose of JPD's General Order on the Use of Force); [39-8] at 1 (explaining the purpose of JPD's General Order on Critical

Incident Response); [39-9] at 1 (explaining the purpose of JPD's General Order on the Investigation of Employee Misconduct).

Accordingly, under the ADA, it is lawful for JPD to require fitness-for-duty evaluations for officers involved in shootings or other critical incidents. Such evaluations are job-related and consistent with JPD's need to preserve public order and to ensure effective policing. To the extent that Tiller argues otherwise,[8] summary judgment is appropriate.

6. Equal Protection Claim

Tiller has not shown that he was treated differently than other similarly situated individuals, as is required to establish a violation of the Equal Protection Clause. U.S. Const. amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

a. Rational-Basis Test

"When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions." *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 602 (2008) (cleaned up); *see also City of Cleburne*, 473 U.S. at 442 (explaining discriminatory disability policies are subject only to rational-basis review). Under rational-basis review, legislatures are afforded broad

---

[8] Once again, Tiller offers no sworn, competent summary judgment evidence to support the claim that JPD acted unlawfully by requiring a fitness-for-duty evaluation from a qualified medical provider.

16

discretion. *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020). Indeed, legislation is presumed valid. *Id.* To satisfy the rational-basis test, a court need only identify a conceivable, rational justification for the governmental action. *Id.* The City is not required to provide affirmative evidentiary support. *Id.* Instead, Tiller has the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (cleaned up).

Tiller has not met this burden. He has provided no competent summary judgment evidence that any similarly situated individuals were treated differently under like circumstances and conditions. He has failed to negate the City's rational interest in assessing the psychological fitness of its officers to ensure that only those with the highest mental stability are entrusted with the responsibilities of maintaining public safety. *See Taylor*, 798 F.3d at 281–82 (explaining that it is rational for a city to take strong measures to protect the mental health of police officers because they are tasked with "apprehending potentially hostile suspects, and they are authorized to use deadly force if necessary"); *Thompson v. City of Arlington*, 838 F. Supp. 1137, 1147 (N.D. Tex. Nov. 17, 1993) (explaining public interest favors whether a police officer is mentally capable of "exercising in an effective and safe manner the awesome and dangerous power of an armed police officer"). The City also has a rational, financial interest in avoiding indefinite paid leave, particularly when those resources could be directed toward employing an active officer, performing the essential duties of the job.

Tiller has not shown that the City treated him differently from other JPD officers who were involved in fatal shootings, and subsequently, who failed to be cleared for duty. The City's protocols, including fitness-for-duty evaluations, are uniformly applied to ensure that only mentally fit officers return to active service, therefore protecting the City's undeniable interest in public safety. Because Tiller has failed to refute the City's rational interests, establishing a violation of his right to equal protection under the law, summary judgment is appropriate.

    b. *Monell* Liability

The City of Jackson cannot be held liable under Section 1983 unless "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish *Monell* liability, Tiller must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a" federal right. *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (cleaned up); *see also Brown v. Tarrant Cnty.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (finding the failure to establish each prong precludes *Monell* liability).

Tiller has not established a single prong of the three required to show *Monell* liability. He has identified no official municipal policy, custom, or practice that was the moving force behind the alleged constitutional violation. So absent competent summary judgment evidence that the City of Jackson violated Tiller's right to equal

18

protection under the law, through an official policy of discrimination, summary judgment is appropriate.

B. State-Law Claims

In his [1] Complaint, Tiller also alleges multiple state-law violations under the umbrella of supplemental jurisdiction. *See* 28 U.S.C. § 1367. These claims include "mental anguish, bod[ily] injuries, negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, [and] negligent infliction of emotional distress." [1] at 10. The City did not move for summary judgment on these claims.

"The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 748 (5th Cir. 2014) (per curiam) (cleaned up). Because the Court grants summary judgment on Tiller's ADA and equal-protection claims, the Court declines to exercise supplemental jurisdiction over the remaining, pendent state-law claims. *See Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872–73 (5th Cir. 2016).[9]

---

[9] It appears most, if not all, of the remaining state-law claims would fail as a matter of law regardless. *See, e.g.*, *Rimmer v. Hancock Cnty.*, No. 1:23-CV-198, 2024 WL 4310876, at *2 n.2 (S.D. Miss. Sept. 26, 2024) ("Ordinarily the Mississippi Tort Claims Act (MTCA) provides governmental entities immunity for claims of intentional infliction of emotion[al] distress."); *Green v. City of Monroe*, No. 3:22-CV-884, 2023 WL 2773543, at *11 (W.D. La. Mar. 16, 2023) ("A failure to . . . supervise claim represents yet another type of *Monell* claim."), *report and recommendation adopted*, 2023 WL 2764653 (W.D. La. Mar. 31, 2024); *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021) (per curiam) ("The district court dismissed the negligent hiring and negligent retention and supervision claims against the City largely for the same reasons it dismissed [the] *Monell* claim."); *Vann v. City of Meridian*, No. 3:21-CV-305, 2022 WL 3570337, at *5 (S.D. Miss. Aug. 18, 2022) (dismissing claims for "body injuries" and "mental anguish" because of an apparent concession by plaintiff's counsel that they were not independent claims); *Pittman v. Miss. Dep't of Human*

\*   \*   \*

Having combed through Tiller's summary judgment briefing,—even when viewed in the light most favorable to him—the Court has not found any competent summary judgment evidence to support his ADA and equal-protection claims. Because the City of Jackson has pointed to this absence of evidence,[10] and because Tiller has failed to meet his burden, the City is entitled to summary judgment on those claims.

IV. Conclusion

The Court has considered all arguments. Those not addressed in this Order would not have changed the outcome of the Court's decision. For the reasons stated, the Court GRANTS the City of Jackson's [37] Motion for Summary Judgment and DISMISSES Tiller's federal ADA and equal-protection claims with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims, and so it DISMISSES them without prejudice. The Court will enter a separate final judgment.

SO ORDERED, this 16th of May, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

---

*Servs.*, No. 3:22-CV-723, 2023 WL 1999491, at \*3 (S.D. Miss. Feb. 14, 2023) (dismissing claims for "bodily injuries" and "mental anguish" because of an apparent concession by plaintiff's counsel that they were "merely types of damages . . . in connection with [the plaintiff's] federal discrimination claims").

[10] Tiller does not attach any affidavits, depositions, interrogatory responses, or any other sworn statements to his [41] Response or [43] Memorandum. *See* [44] at 3.